Walter E. Hart, J.
Defendant predicates his defense to the charge of violation of the Sabbath Law statute on the contention that he falls within the exception provided for by section 2147-a of the Penal Law and section E51-1.0 of the Administrative Code of the City of New York which was enacted pursuant to the authority granted to the city by section 2147-a of the Penal Law.
Section 2147-a of the Penal Law provides;
“Local option in certain cities. Notwithstanding any other provision of law, the local legislative body of any city of one million or more shall have power by local law or ordinance adopted prior to December thirty-first, nineteen hundred sixty-three to permit the conduct of a trade or public selling or offering for sale of any property on Sunday, provided that the person who conducts such trade or public selling or offering for sale (1) is a person who as the proprietor of the business uniformly keeps another day of the week as holy time, (2) does not himself labor, employ others to labor in, by or with another conduct a trade or publicly sell or offer for sale any property on the day he keeps as holy time and closes the business on Saturday, (3) that such labor, trade or business will be conducted in its *1036 normal course by the proprietor and members of his immediate family, as the sole means of occupation of the proprietor, and, (4) if permitted to conduct a trade or to sell or offer to sell any property on Sunday, the proprietor will do so in such a manner as not to interrupt or disturb the repose of religious liberty of the community. The local legislative body of such city may impose other reasonable restrictions on the conduct of any such trade or public selling or offering for sale of property, including the hours during which the same may be permitted.
“ For the purpose of this section, the term * another day of the week ’ shall mean the period from sundown on such day of the week to sundown of the next day or any twenty-four-hour period other than Sunday.”
Section E51-1.0 of the Administrative Code of the City of New York provides as follows:
“ § E51-1.0. Conduct of trade or business on Sunday.
“ (a) Notwithstanding any other provision of law it shall be lawful to conduct a trade or public selling or offering for sale of any property on Sunday, provided that the person who conducts such trade or public selling or offering for sale “ (1) Is a person who as the proprietor of the business uniformly keeps another day of the week as holy time,
“ (2) Does not himself labor, employ others to labor in, by or with another conduct a trade or publicly sell or offer for sale any property on the day he keeps as holy time and closes the business on Saturday,
“ (3) That such labor, trade or business will be conducted in its normal course by the proprietor and members of his immediate family as the sole means of occupation of the proprietor, and
“ (4) So conducts such trade or public selling or offering for sale on Sunday in such a manner as not to interrupt or disturb the repose of religious liberty of the community.
“ (b) For the purpose of this section, the term ‘ another day of the week ’ shall mean the period from sundown on such day of the week to sundown of the next day, or any twenty-four-hour period other than Sunday.”
The facts with respect to the action were stipulated:
“ 1. That the defendant conducted his business in the corporate name known as * Mister Lumber, Inc. ’
“2. That the defendant is the sole stockholder of said corporation.
“ 3. That the defendant derives his sole livelihood from said business and that said business is the sole means of his occupation.
*1037 ‘ ‘ 4. That the defendant is not open for business on Saturday.
‘ ‘ 5. That the defendant uniformly keeps another day of the week, to wit, Saturday, as his holy time.
“ 6. That the defendant and his employees did publicly offer for sale and did sell various lumber material, items and goods on Sunday, December 15,1963.
“ 7. That the defendant employed four (4) other persons who were not members of his immediate family, on Sunday, December 15, 1963, the date charged in the affidavit and information, to sell items of lumber ”.
The issue therefore to be resolved is whether the statute exculpates defendant in view of the fact that in conducting his business, he had the assistance of employees and that he conducted business in the name of a corporation of which he was the sole stockholder. The nub of the issue is what the Legislature and the City Council intended by the meaning of the word “ conduct ”. In construing a statute, the court must be guided by certain canons of interpretation to arrive at the legislative intent. This principle is best expressed in McKinney’s Statutes (Cons. Laws of N. Y., Book 1, § 111): “ The intent of the Legislature is the primary object sought in the interpretation of statutes; and, to secure this object, the literal meaning of the words used must yield. Whenever the intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction be contrary to its letter; for a thing which is within the letter of the statute is not within the statute unless it be within the intention of the lawmakers, but a case within the intention of a statute is within the statute, though an exact literal construction would exclude it. It is a familiar legal maxim that ‘ he who considers merely the letter of an instrument goes but skin deep into its meaning, ’ and all statutes are to be construed according to their meaning, not according to the letter. In statutory exposition the reason and the spirit of the law, are above mere cavil about words; * * * ‘ When the courts make an exception from the letter of a statute because the subject excepted is not within its spirit and meaning, they do so to avoid a result so unreasonable or absurd as to force the conviction upon the mind that the excepted subject could not have been intended by the Legislature, and that if it had been presented to that body, it would have disclaimed any intention to include it. ’ The following test announced in Bacon’s Abridgement for determining whether departure shall be made from the literal wording is sometimes approved by the courts: ‘ In order to form a right judgment whether a case be within the *1038 equity of a statute, it is a good way to suppose the lawmaker present; and that you have asked him this question, Did you intend to comprehend this case? Then you must give yourself such answer, as you imagine he, being an upright and reasonable man, would have given. If this be, that he did mean to comprehend it, you may safely hold the case to be within the equity of the statute; for while you do no more than he would have done, you do not act contrary to the statute, but in conformity thereto. ’ In the interpretation of penal statutes, which generally receive a strict interpretation, it is peculiarly a sound doctrine to restrict their application to cases which are within the spirit of the law as well as within the letter; and in the interpretation of remedial statutes, which normally receive a liberal construction, it is particularly proper to extend their operation to cases within the intent of the lawmakers though not covered by the exact meaning of their language. Especially is a literal construction to be avoided when it results in objectionable consequences, hardship, or injustice.”
The principles above set forth are concisely pronounced in Hudson Iron Co. v. Alger (54 N Y. 173, 175): “ In construing any statute the intention of the law makers must be sought for. That is the grand central light in which all Statutes must be read. The intention, however, is to be sought for in the language used. But, for the purpose of understanding the language, the objects the law makers had in view and the motives which moved them to enact the law may be considered.”
In determining the intention of the Legislature and understanding the language of the statute, ‘1 the motives which moved them to enact the law ’ ’ may be gleaned from a statement by the Council in the City Record of September 19, 1963, which reads as follows: “We believe that the enactment of this law will extend the frontiers of religious freedom in our City and manifest the historic American concern for fair-play for all minorities. Thus, it will eliminate the hardship imposed by the current Sunday laws, and end the economic discrimination suffered because of religious beliefs * * * we are not unmindful of the fact the religious equality is another cornerstone of our democracy.”
The meaning of the word' ‘ conduct ’ ’ as contended by respondent is that to come within the language of the exemption, the business or trade must be run by the entrepreneur himself without assistance (except for members of Ms immediate family). The word ‘ ‘ conduct ’ ’, however, has a broader meaning. It is defined in Webster’s International Dictionary (2d ed., 1958, Unabridged) at page 557, as follows: “ 1. To lead, or guide; to *1039 escort; to attend; also, to bring by or as by leading. 2. Specif, a. To lead as a commander, b. To have the direction of; to manage ; to direct; to carry on. ’ ’ The dictionary continues with the following synonyms: ' ‘ Guide, convoy, regulate, govern, rule, superintend, supervise — conduct, direct, manage, control. Conduct stresses the idea of immediate supervision or personal leadership ’ ’.
This meaning has been accepted by courts in other jurisdictions. In State v. Mahfouz (181 La. 23, 26) the court stated that the transitive verb ‘‘ conduct ’ ’ stresses the idea of immediate supervision or personal leadership, that it means ‘‘to lead, to have direction of, to manage, to direct, to carry on.”
The same construction was adopted in Wichita Film & Supply Co. v. Yale (194 Mo. App. 60, 65).
Thus it would appear that it was the appellant who conducted the business and that the employees were merely under his supervision, management, direction and control. It is to be observed that the statute by its terms does not proscribe the employment of others in the conduct of the business.
Other canons of construction are of assistance in resolving the issue:
“A construction of a statute is favored which makes it operate equally on all classes of persons and avoids unjust discrimination.” (§ 147, McKinney’s Statutes.)
“It is never presumed that the Legislature intended unwise or injurious results to flow from its action; and where the consequences of one construction of a statute are mischievous or disastrous, a more fortunate construction should be sought and effectuated if possible.” (§ 148, McKinney’s Statutes.)
The construction urged by the People would result in an unjust discrimination in favor of fruitful proprietors blessed with a large family as against those who are not so blessed, or against a woman proprietor of a store in competition with a man in a business which entails lifting heavy objects in a store. The interpretation urged by the respondent would cause a capricious if not whimsical discrimination. Such was not the intention of the Legislature. “ [I]t is presumed that the legislature intended to enact a valid, sensible, and just law (Lake Shore & M. S. Ry. Co. v. Cincinnati, W. & M. Ry. Co., 116 Ind. 578, 19 N. E. 440) ”. (McCaffrey, Statutory Construction, pp. 36-37.)
The other point raised by respondent is that the ‘ ‘ proprietor ’ ’ of the business is a corporation and not the defendant. It is to be first observed that the corporation was not made the defendant in the action but the individual proprietor of all of *1040 the stock of the corporation was. With respect to the contention that the exemption afforded by the statute only applies to individual proprietors conducting business but not to one so engaged in corporate form, if followed, in my opinion might be violative of the Fourteenth Amendment to the United States Constitution. This opinion is predicated on the reasoning of the court in Ligget Co. v. Baldridge (278 U. S. 105). There the Supreme Court held unconstitutional, as violative of the Fourteenth Amendment, a statute forbidding any corporation to acquire any new pharmacies unless all of the stockholders were pharmacists. The decision in that case was followed by the New York courts in holding unconstitutional sections 1352 and 1354 of the Education Law, which restricted ownership of pharmacies to licensed pharmacists (Pratter v. Lascoff, 140 Misc. 211, affd. 236 App. Div. 713, affd. 261 N. Y. 509). An interpretation of a statute which would result in the conclusion that it is unconstitutional should be avoided. As expressed in section 150 of McKinney’s Statutes: “It is with great reluctance and as a last resort that the courts will strike down a solemn legislative enactment on the ground that it conflicts with the state or federal constitution. Every presumption is in favor of the validity of the statute, and every effort will be made to give its ambiguous language such a meaning that the act may stand without conflict with the fundamental law.”
The judgment should be reversed on the law and the complaint dismissed.