STATE OF NEW YORK, Plaintiff,

v.

Walter T. BLANK and Abalene Pest Control Service, Inc., and Orkin Exterminating Company, Inc., Defendants.

Walter T. BLANK and Abalene Pest Control Service, Inc., Third–Party Plaintiffs–Appellees,

v.

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, New England Marine Contractors, Inc., Third–Party Defendants,

National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Capital Mutual Insurance Co., Third–Party Defendants–Appellants.

CAPITAL MUTUAL INSURANCE CO., Fourth–Party Plaintiff–Appellee– Cross–Appellant,

v.

NEW YORK MUTUAL UNDERWRITERS, Commercial Mutual Insurance Company, formerly known as Cooperative Fire Insurance Company of Catskill, New York, Security Mutual Fire Insurance Company, and Sterling Insurance Company, Fourth–Party Defendants–Appellants–Cross–Appellees.

Nos. 1092–1094, Dockets 93–7952, 93–9002 and 93–9004.

United States Court of Appeals, Second Circuit.

Argued March 21, 1994.

Decided June 13, 1994.

Sheldon Karasik, New York City (Sheft & Sheft, of counsel), for third-party defendant-appellant Nat. Union.

Alan J. Pierce, Syracuse, NY (Hancock & Estabrook, of counsel), for third-party defendant-appellant and fourth-party plaintiff-appellee-cross-appellant Capital Mut.

Jean F. Gerbini, Albany, NY (Philip H. Gitlen, Whiteman Osterman & Hanna, of counsel), for defendants-third-party plaintiffs-appellees Walter T. Blank and Abalene Pest Control Service, Inc.

Michael J. Lonergan, Albany, NY (Bouck, Holloway, Kiernan and Casey, of counsel), for fourth-party defendants-appellants-cross-appellees N.Y. Mut. Underwriters, Commercial Mut. Ins. Co., Security Mut. Fire Ins. Co., and Sterling Ins. Co.

Before: OAKES, MESKILL and ALTIMARI, Circuit Judges.

OAKES, Senior Circuit Judge:

I. Background

In March 1987, employees of the New York State Department of Environmental Conservation ("the DEC") discovered pesticides buried at 10274 Saratoga Road, Fort Edward, Town of Moreau, Saratoga County, New York ("the site"). This discovery led to several lawsuits including this one, commenced by the State of New York on February 16, 1988, against the following defendants: Abalene Pest Control Service, Inc. ("Abalene"), the owner and operator of the site until December 31, 1986; Walter T. Blank, the president, treasurer, and sole shareholder of Abalene; and Orkin Exterminating Co., Inc. ("Orkin"), the owner of the site since January 1, 1987.[1] New York alleged, *inter alia*, that, from 1972 until December 31, 1986, Abalene and Blank were the owner and occupier of a site contaminated by toxic chemicals. New York claimed that the defendants were liable for the pollution of the site pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9675 (1988 & Supp. IV 1992), New

---

1. New York also instituted criminal proceedings, prosecuting Abalene in state court for illegally disposing of hazardous waste. In January 1989, after a jury trial, Abalene was convicted of knowingly disposing of hazardous wastes in violation of N.Y.Env'tl Conserv.Law §§ 71–2711(1) and –2713(6) (McKinney 1984 & Supp.1994). For these violations, Abalene was fined $150,000.

York State environmental statutes,[2] and New York State common law.

On April 14, 1988, Abalene and Blank brought a third-party complaint against DEC and DEC's Contractor, New England Marine Contractors ("NEMC"), alleging that any contamination of the site was due to the negligence of DEC and NEMC in excavating and removing the pesticides that were found there. The third-party complaint also named as third-party defendants Abalene's insurer, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"),[3] and Blank's insurer, Capital Mutual Insurance Company ("Capital Mutual"). Abalene and Blank sought to hold these insurers liable for the cost of their defense and for indemnification of any damages imposed in the underlying action.

On February 13, 1989, the district court awarded Blank partial summary judgment and held Capital Mutual liable for Blank's defense. The district court denied without prejudice Abalene and Blank's motion for summary judgment against National Union for failure to prove the terms and conditions of the National Union policies. On October 3, 1990, the district court entered an order denying Capital Mutual's motion for reconsideration and affirming its order of February 13, 1989. *New York v. Blank*, 745 F.Supp. 841, 853 (N.D.N.Y.1990). The district court also granted Abalene summary judgment against National Union, declaring National Union liable for the cost of Abalene's defense. *Id.* On October 10, 1991, the district court denied an additional summary judgment motion by National Union and Capital Mutual and ordered the two insurers to provide a defense. Capital Mutual and

National Union entered into a stipulation dated January 28, 1991, under which each insurer was to pay 50% of all defense costs.

In 1992, Capital Mutual filed a fourth-party complaint against another insurer, New York Mutual Underwriters ("NYMU") alleging that NYMU also insured Blank and seeking contribution from NYMU for defense costs and indemnification of Blank. On May 5, 1993, the district court granted summary judgment on the fourth-party complaint in favor of Capital Mutual and ordered NYMU to pay half of Capital Mutual's share of the total defense costs. *New York v. Blank*, 820 F.Supp. 697, 709 (N.D.N.Y.1993). On August 12, 1993, the district court re-allocated defense costs as follows: National Union, 66.66%; Capital Mutual, 16.66%; and NYMU, 16.66%.

## II. Jurisdiction

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 (1988) and 42 U.S.C. § 9613 (1988). On August 20, 1993, pursuant to Fed.R.Civ.P. 54(b), the district court entered as final judgments for appeal the orders concerning the insurers' duty to defend and the allocation of defense costs.[4] National Union, Capital Mutual, and NYMU filed timely notices of appeal on August 31, 1993; September 17, 1993; and September 10, 1993, respectively. This court has jurisdiction pursuant to 28 U.S.C. § 1291 (1988).

## III. Discussion

Each of the insurers challenges the district court's orders on the ground that the allegations of the underlying complaint fall within a

2. Env'tl Conserv.Law §§ 1–0101 to 72–0602 (McKinney 1984 & Supp.1994).

3. National Union also insured Blank, by virtue of his position as an officer and sole-shareholder of Abalene.

4. The district court expressly determined that there was "no just reason for delay" and, pursuant to Fed.R.Civ.P. 54(b), certified as final judgments its orders holding the insurers liable to provide a defense and allocating defense costs amongst the insurers. Final judgment was *not* entered with respect to the insurers' duty to indemnify, however. *See New York v. Amro Realty Corp.*, 936 F.2d 1420, 1423–26 (2d Cir.1991)

("While final rulings on third-party claims for contribution or indemnity are generally not suitable for certification because these claims may be rendered moot by a judgment for defendant in the main action, ... certification of a final ruling on a third-party claim requesting an insurer to supply a defense under an insurance policy is typically a permissible exercise of the district court's discretion" (citation omitted)). Consequently, the only issues on this appeal are whether the district court correctly determined that the insurers are obliged to defend and, if so, whether the district court properly allocated defense costs amongst the insurers.

pollution exclusion clause contained in each of the policies. In addition to this common argument, each insurer raises other arguments. Capital Mutual argues that the district court incorrectly determined that Blank's policy with Capital Mutual obliged Capital Mutual to defend Blank because the complaint names Blank "in his corporate capacity" whereas the policy insures Blank "in his individual capacity." NYMU argues that the district court incorrectly determined that NYMU was obliged to defend Blank because Blank failed to comply with conditions precedent to NYMU's duty to defend. National Union argues that even if it was obliged to defend Abalene, defense costs should have been allocated evenly amongst the three insurers.

### A. Applicable Law and the Standard of Review

■ This appeal involves the interpretation of insurance policies implicated by an action brought pursuant to CERCLA. In such a case, the interpretation of insurance policies is governed by state law. *Olin Corp. v. Consolidated Aluminum Corp.*, 807 F.Supp. 1133, 1140 (S.D.N.Y.1992) (citing *United States v. Kimbell Foods*, 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979)), *aff'd in part, vacated in part*, 5 F.3d 10, 14–15 (2d Cir.1993) (expressly approving district court's analysis of applicability of state law); *see also City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1148 (2d Cir.1989).

■ We review the district court's interpretation of applicable state law *de novo*. *Olin Corp.*, 5 F.3d at 14 (applying *de novo* review of summary judgement award in a case brought pursuant to CERCLA). In ascertaining the applicable state law, we "look to the decisional law of the ... state, as well as to the state's constitution and stat-utes." *Travelers v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir.1994). Where the law of the state is "uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the ... state would resolve the uncertainty or ambiguity." *Id.* (citing *Minotti v. Lensink*, 798 F.2d 607, 610–11 (2d Cir.1986)); *see also In re Eastern*

*and Southern Districts Asbestos Litig.*, 772 F.Supp. 1380, 1389 (E. & S.D.N.Y.1991) (predicting New York law), *rev'd on other grounds, In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir.1992). We will, of course, give greatest weight "to the pronouncements of the New York Court of Appeals." *Travelers*, 14 F.3d at 119. But where there is "no decision by th[e state's highest] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Finally, we may also consider relevant cases from other jurisdictions. *Travelers*, 14 F.3d at 119; *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir.1993) (federal court may consider all sources used by the highest court of the state, including decisions of other jurisdictions).

### B. The Insurers' Duty to Defend
#### 1. Pollution Exclusion Clauses

Each of the insurers argues on appeal that the alleged discharge of pesticides at the site was not "sudden and accidental." As such, the insurers argue, the allegations fall within the "pollution exclusion" clauses contained in each insurer's policy. Therefore, the insurers conclude, they are obliged neither to defend nor to indemnify Abalene and Blank.

■ It is well settled that "[e]xclusions from insurance policy coverage are given strict constructions." *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir.1994). In addition, "[e]xclusionary clauses are given the interpretation most beneficial to the insured." *M.H. Lipiner & Son, Inc. v. Hanover Ins. Co.*, 869 F.2d 685, 687 (2d Cir.1989). Further, the insurer bears the burden of proving that an exclusion applies. *Continental Casualty Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 654, 593 N.Y.S.2d 966, 973, 609 N.E.2d 506, 513 (1993) ("Where contamination could occur in a variety of ways, only one of which is potentially excluded, [the insurer] cannot meet the heavy burden of showing that the exclusion applies in the particular case and is subject to no other

reasonable interpretation"); *see also McCormick & Co., Inc. v. Empire Ins. Group,* 878 F.2d 27, 30 (2d Cir.1989) ("Once the insured shows that a [covered] loss has occurred, the insurer shoulders the burden of demonstrating that the loss claimed is excluded expressly from coverage under the policy terms"). This burden is heavy. *Id.* This is especially so when the insurer is seeking to avoid the duty to defend. *Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984) (an insurer's duty to defend "is broader than its obligation to indemnify"). To avoid an obligation to defend an action against an insured on the ground that an exclusion clause applies, the insurer must demonstrate that there is no reasonable possibility of coverage under the policy. That is, "an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Continental Casualty,* 80 N.Y.2d at 652, 593 N.Y.S.2d at 972, 609 N.E.2d at 512. In addition, where an exclusion allows for an exception, the insurer bears the burden of showing that the exception to that exclusion does not apply. *Colonial Tanning Corp. v. Home Indem. Co.,* 780 F.Supp. 906, 919 (N.D.N.Y.1991) (placing the burden on the insurer to show that discharge was not "sudden and accidental").

Each of the insurance policies here at issue contain a so-called "pollution exclusion" clause. Those clauses exclude from coverage:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.[5]

That is, these insurance policies generally do not cover bodily injury or property damage arising out of the discharge, etc., of toxic chemicals, etc. The clause provides an exception to this exclusion only where the discharge was "sudden and accidental." This exception is limited, however, to discharges that were " 'unexpected, unintended and occurs over a short period of time.' " *Powers Chemco, Inc. v. Federal Ins. Co.,* 144 A.D.2d 445, 447, 533 N.Y.S.2d 1010, 1011 (2d Dept. 1988) (quoting *Technicon Electronics, Inc. v. American Home Ins.,* 141 A.D.2d 124, 533 N.Y.S.2d 91, 103–04 (2d Dept.1988), *aff'd* 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989)), *aff'd* 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989).[6]

■ We find that the pollution exclusion clause and its exception for "sudden and accidental" discharges are expressed in clear and unmistakable language in the policy. *See, e.g., Technicon Elec.,* 74 N.Y.2d at 72, 544 N.Y.S.2d at 532, 542 N.E.2d at 1049 (similar "pollution exclusion" clause found to be unambiguous). Moreover, we find that the language of the exclusion is subject to no reasonable interpretation other than that it generally excludes from coverage intentional discharges. It remains to be determined, however, whether the pollution exclusion clause applies in this case.

■ The insurers argue that the discharge of pesticides at the site resulted from the intentional conduct of the defendants, or

---

5. This language is drawn from Capital Mutual's policy. National Union's pollution exclusion clause is identical to Capital Mutual's except that National Union's clause continued, "or intentional, if for the purpose of pest Control, provided such pest control operations are performed in conformity with any statute, ordinance or regulation applicable thereto." Appendix at 199. We will discuss the effect of this additional clause below. NYMU, without conceding that it issued a policy to Blank asserts that had it issued a policy it would have contained a pollution exclusion clause identical to Capital Mutual's with two exceptions: (1) NYMU's policy would have substituted the word "disbursal" for "dispersal"; and (2) NYMU's policy would have used the phrase "does not apply if the discharge" instead of "does not apply if such discharge." Appendix at 975. Neither of these differences in NYMU's pollution exclusion clause materially affects our analysis, however.

6. We note that the New York Court of Appeals, in affirming *Technicon,* did not reach the question whether a discharge must "occur[] over a short period of time" to be sudden. *Technicon,* 74 N.Y.2d at 76, 544 N.Y.S.2d at 534, 542 N.E.2d at 1051.

of persons under the defendants' control. To support this argument, the insurers point to the indictment, trial, and conviction of Abalene on six counts of unlawful disposal of hazardous wastes in violation of N.Y. Env'tl Conserv. Law §§ 71–2711 and –2713 (McKinney 1984 & Supp.1994). *See* Transcript of Certificate of Conviction, *New York v. Blank,* (N.D.N.Y. Aug. 16, 1989). Under the law of New York, however, the question whether the insurers have a duty to defend the action "rests solely on whether the underlying complaint alleges *any* facts or grounds which bring the action within the protection purchased." *Seaboard Sur.,* 64 N.Y.2d at 310, 486 N.Y.S.2d at 876, 476 N.E.2d at 275 (emphasis added). That is, an insurer may defeat its obligation to defend on the grounds of an exclusion clause only if the insurer can demonstrate that all of the allegations of the complaint fall entirely within the exclusion, and are subject to no other interpretation. *Id.* Thus, information extrinsic to the complaint, such as the criminal convictions of Abalene, is irrelevant. In interpreting the allegations of the complaint, we construe ambiguous or poorly worded terms in favor of the insured. In particular, where the allegations of the underlying complaint are general, ambiguous, or inaptly phrased, courts construe the allegations in favor of coverage. *See, e.g., Avondale Indus., Inc. v. Travelers Indem. Co.,* 887 F.2d 1200, 1204 (2d Cir. 1989), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *Brooklyn Law Sch. v. Aetna Casualty and Sur. Co.,* 849 F.2d 788, 789 (2d Cir.1988); *Munzer v. St. Paul Fire and Marine Ins. Co.,* 145 A.D.2d 193, 198, 538 N.Y.S.2d 633, 636 (3d Dept. 1989); *Commercial Pipe & Supply Corp. v. Allstate Ins. Co.,* 36 A.D.2d 412, 415, 321 N.Y.S.2d 219, 222 (4th Dept.1971), *aff'd,* 30 N.Y.2d 619, 331 N.Y.S.2d 42, 282 N.E.2d 128 (1972); *Autotronic Sys., Inc. v. Aetna Life and Casualty,* 89 A.D.2d 401, 404, 456 N.Y.S.2d 504, 506 (3d Dept.1982); *Brook Shopping Ctr., Inc. v. Liberty Mut. Ins. Co.,* 80 A.D.2d 292, 294, 439 N.Y.S.2d 10, 11–12 (1st Dept.1981).

The State's complaint in this case is not expressly limited to allegations of intentional conduct. The complaint alleged, with respect to the site:

Defendants have and continue to store and mix pesticides at the site which are used for structural pest control and lawn and yard pesticide application. The mixing of pesticides, loading pesticides into tank trucks, the spraying and cleaning of trucks and disposal of pesticide product, waste, residues and containers have occurred on the site. Pesticides, including hazardous substances, have been released and have leaked into the soil and groundwater on and under the site. Disposal of hazardous wastes as defined in ECL § 27–0901(2) has occurred at the site.

The complaint also alleged the following acts by Abalene:

Abalene ... has owned and operated the facility from on or about 1972 until December 31, 1986 and operated the facility at the time of the release of one or more hazardous substances thereon. Material containing hazardous substances was accepted by Abalene, transported to or generated at the site, and was disposed of and released at the facility while Abalene owned and operated the facility.

The complaint does not describe precisely how the discharge of pesticides occurred. Rather, the complaint is couched in the general terms appropriate for a complaint brought pursuant to CERCLA's strict liability provisions. Consider, for example, this allegation, couched in language generally associated with allegations of negligence:

[Abalene and Blank have] failed to protect the groundwater and other natural resources of the State from contamination by the hazardous substances transported to and disposed of and released at the site.

These general allegations stand in marked contrast to allegations that have been held by the New York Court of Appeals to fall within the standard pollution exclusion clause. In *Technicon Elec.,* 74 N.Y.2d at 73, 544 N.Y.S.2d at 533, 542 N.E.2d at 1049, the New York Court of Appeals held that allegations that "[t]he discharge by defendants of toxic wastes ... has been made and is being made knowingly" fell within a pollution exclusion clause. *See also Powers Chemco,* 74 N.Y.2d at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at

1302 (alleging "(1) 'burying drums containing the wastes,' (2) 'dumping waste liquids from 55–gallon drums into open pits and then disposing of the drums in the pit,' and (3) discharging 'wastes through a pipe into pits at the site' "). Similarly, the allegations are different from those held by this circuit to fall within the standard pollution exclusion clause. For example, in *EAD Metallurgical, Inc. v. Aetna Casualty and Sur. Co.*, 905 F.2d 8, 11 (2d Cir.1990), we held that a pollution exclusion clause relieved an insurer of its duty to defend where the underlying complaint alleged that "EAD ... did wrongfully, willfully and illegally commit waste on, and damage to, [the] premises ... by causing, implementing, creating, generating, injecting and inflicting radioactive contamination...." *See also New York v. Amro Realty Corp.*, 936 F.2d 1420, 1427 (2d Cir.1991) (holding that allegations of a complaint fell within the terms of a pollution exclusion clause where the complaint alleged that "during some thirty years, [the defendant in the underlying action] 'disposed' of its hazardous manufacturing waste by methods which the defendants 'knew or should have known ... resulted in their release into the environment,' " and specified that "the wastes were disposed of ... in several places on the site, including: the parking lot, sinks which discharged into septic systems on the site, and drains which discharged through sewage pipe into a drainage ditch ...").

NYMU argues that "even if the underlying complaint admits of a construction of 'accidental' discharge, a fair reading of the complaint in its entirety allows no construction other than that disposal was not 'sudden.' " NYMU's Brief at 25. As we noted above, the New York Court of Appeals has not resolved the question whether the word "sudden" limits the "sudden and accidental" exception to the exclusion to discharge that "occurs over a short period of time" or whether "sudden" extends the exception to conduct that occurred over a prolonged period but was "sudden" in the sense that it was "unexpected." *Technicon*, 74 N.Y.2d at 76, 544 N.Y.S.2d at 534, 542 N.E.2d at 1051. We need not resolve this question either, however, because although the complaint is framed in general terms and embraces conduct oc-

curring over a period of several years, the complaint is by no means limited to allegations of continuous discharge. *See Amro Realty*, 936 F.2d at 1427–28. That is, even if the New York Court of Appeals unequivocally held that unintentional, unexpected discharge that occurred over an extended period is not within the "sudden and accidental" exception to the pollution exclusion clause, the allegations of the complaint do not preclude the possibility that unintentional discharge occurred at the site in a short period of time.

We find that the insurers have not met their burden of demonstrating no reasonable possibility of coverage for the damages and conduct alleged in New York's complaint. The complaint's broad, general allegations admit of the possibility that property damage was caused, if even in part, by the "sudden and accidental" discharge of pesticides. We conclude, therefore, that the pollution exclusion clauses do not relieve the insurers of their duty to defend Abalene and Blank.

### 2. Capital Mutual's Policy with Blank in His Individual Capacity

Capital Mutual argues that its policy with Blank insures him in his individual capacity, rather than his corporate capacity. This position is based on the first page, the "declarations page," of Capital Mutual's policy with Blank. That page includes a section marked "Item 3" consisting of the text, "The Named Insured is:" and a series of boxes marked "Individual," "Partnership," "Corporation," "Joint Venture," and "Other." The box marked "Individual" is checked. Capital Mutual also asserts that this first page indicates that the policy insures Blank in his individual, rather than corporate, capacity because "Item No. 1 of the declarations page of Capital Mutual's policy of insurance issued to Blank lists the named insured as 'Walter T. and Jane Blank.' " Capital Mutual's Brief at 14.

Capital Mutual argues that because the State sued Blank in his corporate capacity, Capital Mutual is not obliged to defend Blank. Capital Mutual points to language in Section II of the policy in an effort to demon-

strate that the policy does not cover property owned or operated by Abalene. In a subsection entitled, "Persons Insured," the policy provides:

> Each of the following is an insured under this insurance to the extent set forth below:
>
> (a) if the named insured is designated in the Declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such a business.

Capital Mutual argues that under this language Blank would only be insured in a corporate capacity if Abalene had been a "sole proprietorship." This argument raises the question whether, under the terms of the policy, it is possible to be the sole proprietor of a business even if the business is not legally organized as a sole proprietorship. That is, we must determine whether we are to afford "sole proprietor" a narrow, technical legal definition or whether we are to afford the term a definition that, while consistent with the legal definition, also comports with the plain and ordinary meaning of the term.

■■■■■ Under the law of New York, the latter course is preferred. In interpreting insurance policies, "[n]arrow and technical legal definitions are to be avoided." *General Accident Ins. Co. of America v. Hyatt Legal Servs.,* 130 A.D.2d 970, 516 N.Y.S.2d 560 (4th Dept.1987). Instead, unambiguous terms are to be given their "plain and ordinary" meaning. *Lavanant v. General Accident Ins. Co. of America,* 79 N.Y.2d 623, 629, 584 N.Y.S.2d 744, 747, 595 N.E.2d 819, 822 (1992); *Ace Wire & Cable Co., Inc. v. Aetna Casualty & Sur. Co.,* 60 N.Y.2d 390, 398, 469 N.Y.S.2d 655, 658, 457 N.E.2d 761, 764 (1983) ("The tests to be applied in construing an insurance policy are common speech ... and the reasonable expectation and purpose of the ordinary business [person]") (citation omitted). Further, any ambiguity in an insurance poli-

cy is to be resolved against the insurer. *Id.; see also Kimmins,* 19 F.3d at 81; *United States Fidelity & Guar. Co. v. Annunziata,* 501 N.Y.S.2d 790, 791, 67 N.Y.2d 229, 232, 492 N.E.2d 1206, 1207 (1986).

■■■■ As the term is commonly understood, "sole proprietorship" is a form of business in which a single person owns all of the assets of a business. Here, it is undisputed that Blank was the sole shareholder of Abalene. The term "sole proprietor" often connotes something more than ownership, however. In particular, the term often connotes a large degree of control over the affairs of the business. Thus, it might be incorrect to characterize the sole shareholder of a corporation as a "sole proprietor" when that person has delegated operation of the corporation to corporate officers. Where, however, the sole shareholder maintains close control over the operation of the corporation—by, for example, assuming the position of corporation president—the term "sole proprietor" may be an appropriate characterization. In this case, in addition to being the sole shareholder, Blank was the President and Treasurer of Abalene. In those capacities, Blank exercised close control over the operation of Abalene. Therefore, Blank may be characterized as a sole proprietor as the term is ordinarily understood, even though Abalene was organized as a corporation and was not in the technical sense a sole proprietorship.[7] *Cf. People v. Schwebel,* 44 Misc.2d 1035, 1039–40, 255 N.Y.S.2d 760, 766 (defining appellant as *proprietor* although appellant's business was organized as a corporation where appellant "conducted the business" and exercised "supervision, management, direction, and control" over employees), *aff'd,* 16 N.Y.2d 724, 262 N.Y.S.2d 107, 209 N.E.2d 724 (1965).

We find that the district court properly determined that Capital Mutual was obliged to defend Blank in the underlying action.

3. Conditions Precedent to NYMU's Policy

NYMU argues that if it issued Blank a policy, the policy would have conditioned cov-

---

**7.** We note that other provisions of the policy indicate that the parties understood Blank's activities through Abalene to be covered by the policy. Two of the premises described on the

Declarations page—including the site at issue in this case—are described as "Office/storage" space. Appendix at 147.

erage upon (1) "prompt written notice of any alleged occurrence" and (2) immediate delivery of copies of any pertinent pleadings. NYMU's Brief at 7. NYMU argues that because Blank failed to comply with either of these conditions, Blank may not force NYMU to bear the costs of his defense and defeat "any right of a co-insurer to contribution of defense costs." *Id.* at 7–8.

The district court properly found, first, that New York law provides a cause of action for contribution between co-insurers "when several insurers cover the same risk and payment for loss has been made by one, that carrier has a right to pro rata contribution from other insurers" *See State v. Blank,* 820 F.Supp. 697, 707 (N.D.N.Y.1993) (citing *Vigilant Ins. Co. v. Employers Ins. of Wausau,* 626 F.Supp. 262, 268 (S.D.N.Y.1986)). The district court then relied on *Zurich–American Ins. Cos. v. Atlantic Mut. Ins. Cos.,* 139 A.D.2d 379, 531 N.Y.S.2d 911, 916 (1st Dept. 1988), *aff'd,* 74 N.Y.2d 621, 541 N.Y.S.2d 970, 539 N.E.2d 1098 (1989), for the proposition that "an insurer may maintain a contribution action against a co-insurer without complying with the formal claim requirements that would be imposed upon the insured." *Blank,* 820 F.Supp. at 707.

We find that the district court's reliance on *Zurich–American* was misplaced. Careful analysis of *Zurich–American* reveals that the case did not concern an insured's failure to comply with formal claim requirements contained in the policy. Rather, *Zurich–American* involved the question whether the insureds were covered at all. In *Zurich–American,* the insurer of a day-care center brought an action against the insurer of the church at which the day-care center was located. The action claimed that the insurer of the church was obliged to participate in the defense of an underlying action brought against employees of the day-care center for the sexual abuse of children. The church's insurer attempted to avoid liability to defend two defendants in the underlying action on the grounds that although they were employees of the day-care center, they were not, in fact, employees of the church. The First Department acknowledged that the church's insurer would not be obliged to indemnify

parties to the suit who were ultimately found not to be church employees. The First Department found, however, that the question whether the church's insurer was obligated to contribute to the defense of particular parties to the suit was to be resolved on the face of the complaint. Because the complaint alleged that the insureds were church employees, the First Department found that the church's insurer was obligated to contribute toward their defense. Thus, *Zurich–American* did not hold that the right of contribution against a co-insurer would survive the insured's failure to comply with the provisions of the policy.

We further find that the district court mistakenly determined that a cause of action against an insurer for contribution will lie even where the insured has not complied with conditions of the policy.

We have previously observed that, under New York law, an insured has an obligation to comply with the notice-of-occurrence and notice-of-claims provisions of an insurance policy. *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.,* 822 F.2d 267, 271 (2d Cir.1987) ("Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy"); *see also Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 905, 293 N.E.2d 76, 78 (1972). Where the insured fails to comply with these conditions, the insurer is relieved of its duty not only to indemnify, but also to defend the insured. *Olin Corp. v. Insurance Co. of North America,* 743 F.Supp. 1044, 1055 (S.D.N.Y.1990), *aff'd,* 929 F.2d 62 (2d Cir.1991) (per curiam). Thus, the insured's failure to provide notice within a reasonable time without a valid excuse for delay constitutes a complete defense to a third-party complaint by the insured to compel the insurer to bear the costs of defense in the underlying action. *See Christiania Gen. Ins. Corp. v. Great American Ins. Co.,* 979 F.2d 268, 275 (2d Cir.1992); *Utica Mut. Ins. v. Firemen's Fund Ins. Cos.,* 748 F.2d 118, 121 (2d Cir.1984). Indeed, under New York law, "[a]bsent a valid excuse" the insured's failure to provide notice "vitiates

coverage." *E.g., In re Allcity Ins. Co. and Jimenez,* 576 N.Y.S.2d 87, 88, 78 N.Y.2d 1054, 1055, 581 N.E.2d 1342, 1343 (1991). As this court has previously observed, notification provisions advance several important policies:

> They enable insurers to make a timely investigation of relevant events and exercise early control over a claim. Early control may lead to a settlement before litigation and enable insurers to take steps to eliminate the risk of similar occurrences in the future. When insurers have timely notice of relevant occurrences, they can establish more accurate renewal premiums and maintain adequate reserves.

*Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.,* 822 F.2d 267, 271 (2d Cir.1987). While this court offered this observation in the context of a dispute over compliance with a notice-of-occurrence provision, the considerations, particularly the concerns over an insurer's capacity to conduct litigation and settlement negotiations, apply equally to notice-of-claim provisions.

NYMU's argument presents the question whether failure to comply with a policy's notice requirements also constitutes a complete defense to a fourth-party complaint by a successive insurer against a previous insurer for contribution to the costs of the insured's defense. Although we have found no New York cases directly on point, a comparison of cases involving disputes between insureds and insurers with cases involving disputes between co-insurers and cases involving disputes between parties to a reinsurance contract allow us to predict with reasonable certainty the result that the New York Court of Appeals would reach were it presented with this issue. *See Travelers,* 14 F.3d at 119.

At least one New York court has held that an insurer may seek contribution from a co-insurer notwithstanding the insured's failure to give prompt notice to the co-insurer where the insurer itself provided reasonably timely notice to the co-insurer. *Crum & Forster Org. v. Morgan,* 192 A.D.2d 652, 654, 596 N.Y.S.2d 472, 474 (2d Dept. 1993). *Crum & Forster* implies that had the first insurer failed to provide the second

insurer with timely notice, the first insurer could not have sought contribution from the second insurer. Thus, although the duty to provide notice rests primarily upon the insured, a co-insurer hoping to benefit from the presence of another insurer, must ensure that the notice provisions of the insured policy with the second insurer are complied with. That is, if the insured fails to give notice to one co-insurer, the co-insurer that received notice must give notice to the co-insurer that did not. *See id.* Conversely, if the insured provided notice to only one co-insurer and if the co-insurer who received notice fails to give prompt notice to the co-insurer that did not, the co-insurer who received notice may not seek contribution from the co-insurer who did not. Similarly, for reasons stated below, we find that where the insured provides notice to a successor insurer but fails to provide notice to the previous insurer, the successor may not seek contribution from the previous insurer unless the previous insurer received prompt notice from the insured or, in the alternative, from the successor insurer.

The rationale supporting strict enforcement of a notice-of-occurrence and notice-of-claim requirements, *see Commercial Union,* 822 F.2d at 267, applies in this case, where a successive insurer seeks contribution from a previous insurer. If anything, the rationale for requiring notice in the case of successive insurers is stronger than the rationale for requiring notice in the case of co-insurers. Because co-insurers have issued policies to the insured for the same time period, their interests in investigating the occurrence and controlling litigation and settlement negotiations closely converge. *See Crum & Forster,* 192 A.D.2d at 654, 596 N.Y.S.2d at 474. Because successive insurers cover different time periods, their interests in investigating occurrences necessarily diverge. Each insurer has an interest in establishing that the occurrence took place during the time period covered by the other insurer. Because these interests diverge, if a successor insurer hopes to benefit from an insured's policy with a previous insurer, the successor must comply with the insured's obligations under the policy. If the insured fails to comply with the notice requirements of a policy issued by

a previous insurer, therefore, the successive insurer must give prompt notice.

Here it is undisputed that Blank did not provide NYMU with either notice of the occurrence or of the claim. The question whether Capital Mutual may seek contribution from NYMU for the cost of Blank's defense, therefore, turns on whether Capital Mutual provided notice to NYMU within a reasonable time under all the circumstances. *Cf. Crum & Forster*, 192 A.D.2d at 654, 596 N.Y.S.2d at 474; *Allstate Ins. Co. v. Kashkin*, 130 A.D.2d 744, 745, 516 N.Y.S.2d 43, 43 (2d Dept.1987) ("An insured must give notice to his or her insurer within the time limit provided in the insurance policy or within a reasonable time under all the circumstances"); *see also* N.Y.Ins.Law § 3420(a)(4) (McKinney's 1985) ("A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured or by any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given *as soon as was reasonably possible*") (emphasis added).

New York courts have held that the question whether notice was given within a reasonable time may be determined as a question of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay. *E.g. Gresham v. American Gen. Life Ins. Co.*, 135 A.D.2d 1121, 1122, 523 N.Y.S.2d 282, 282 (4th Dept.1987) ("While ordinarily it is a question of fact whether an insured gave timely notice of loss, summary judgment is warranted where the insured has not offered a credible excuse for the delay in notification and where the underlying facts are not in dispute"); *Jenkins v. Burgos*, 99 A.D.2d 217, 220, 472 N.Y.S.2d 373, 375–76 (1st Dept.1984); *Hartford Fire Ins. Co. v. Masternak*, 55 A.D.2d 472, 474, 390 N.Y.S.2d 949, 952 (4th Dept. 1977) ("It is only when no excuse is offered for delay, or when no credible evidence supports the proffered excuse, that notice will be held untimely as a matter of law"); *Columbus Trust Co. v. Hanover Ins. Co.*, 50 A.D.2d 798, 799, 375 N.Y.S.2d 628, 629 (2d Dept. 1975) (collecting cases).

In this case, there are no disputed issues of fact that are material to the question whether Capital Mutual provided NYMU with reasonable notice of the occurrence and claim. Second, Capital Mutual has not offered a valid excuse for its delay. This case involves the failure of an insurance company, fully familiar with the notice requirements of a standard insurance policy as well as with the consequences of failure to give prompt notice, to give notice to another insurance company. Capital Mutual's only proffered excuse for its delay in notifying NYMU of the claim was that it maintained a "good faith" belief in non-liability under the policy. New York courts have held that an *insured's* good faith belief in non-liability *may* excuse delay in notifying its *insurer* of the *occurrence. See, e.g., E.T. Nutrition Inc. v. Central Mut. Ins. Co.*, 201 A.D.2d 451, 452, 607 N.Y.S.2d 392, 393 (2d Dept.1994); *Beach Haven Apartments, No. 6, Inc. v. Allcity Ins. Co.*, 182 A.D.2d 658, 659, 581 N.Y.S.2d 689, 698 (2d Dept.1992); *see also Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 797 F.Supp. 176, 185 (E.D.N.Y.1992). These cases, however, are distinguishable. They involved the failure of an insured to notify an insurer of an *occurrence.* This case involves not only the failure to notify an insurer of an *occurrence* but also failure to notify of a *claim.* The cases excusing an insured's failure to notify an insurer of an occurrence based on a good faith belief of non-liability are supported by the rationale that if insureds were required to notify insurers of every incident that poses even a remote possibility of liability, insurers would soon be swamped with notice of minor incidents that pose little danger of resulting even in an action by the injured party against the insured, let alone a claim by the insured against the insurer. *See Christiania*, 979 F.2d at 275 (insured's duty to provide notice will not arise under New York law "on the basis of mere speculation, rumor, or remote contingencies far removed from the particular policy in question"). In *Beach Haven Apartments*, for example, the insured provided notice to the insurer soon after a claim was filed. . *Beach Haven Apartments*, 182

A.D.2d at 659, 581 N.Y.S.2d at 690. Once there is a reasonable possibility that the policy will be involved, however, this rationale is no longer applicable. *See Christiania,* 979 F.2d at 276 (knowledge that claim was likely, though not yet actually filed, sufficient to trigger the duty of notice); *see also Ogden Corp. v. Travelers Indem. Co.,* 924 F.2d 39, 43 (2d Cir.1991). It is true that the insurer may believe in good-faith that it would prevail in court if the insured claims coverage. This belief, however, would no doubt be based upon factual investigation of the occurrence and legal analysis of the claim. The opportunity to conduct such investigation and research is the very reason for the notification requirement. Thus, a good faith belief by an *insured* that it was not covered under the policy would not excuse unreasonable delay in failing to notify its *insurer* of a *claim.* Similarly, a good faith belief by an *insurer* that it is not liable to defend or indemnify its insured on a claim by the insured will not excuse unreasonable delay in failing to notify a *previous insurer* of the *claim.* Just as the successive insurer benefits from notification by the insured, notification that allows the insurer to investigate the factual and legal basis of the claim, the previous insurer is entitled to the benefits that prompt notification brings. We conclude that, as a matter of law, a good faith belief by a successive insurer that it is not liable to defend or indemnify its insured on a claim does not excuse the successive insurer's failure to notify the previous insurer of the claim. Thus, Capital Mutual's belief that it was not liable to defend Blank does not excuse its failure to notify NYMU of the occurrence and claim at issue. We therefore decide whether Capital Mutual's notice to NYMU was reasonable as a matter of law.

In the absence of mitigating factors, courts have found, as a matter of law, "[e]ven short periods of delay [to be] unreasonable." *Olin Corp.,* 743 F.Supp. at 1053. Thus, even periods as short as 29 days have been found unreasonable. *Government Employees Ins. Co. v. Elman,* 40 A.D.2d 994, 338 N.Y.S.2d 666, 667 (2d Dept.1972). And courts have routinely found periods of delay less than ten months to be unreasonable. *See, e.g., Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.,* 748 F.2d 118, 121, 123 (2d Cir.1984) (deferring to trial court's finding, as a mixed question of law and fact, that six month delay was unreasonable); *Power Auth. v. Westinghouse Elec. Corp.,* 117 A.D.2d 336, 342, 502 N.Y.S.2d 420, 423 (1st Dept.1986) (53 days); *Peerless Ins. Co. v. Nationwide Ins. Co.,* 12 A.D.2d 602, 208 N.Y.S.2d 469, 470 (1st Dept. 1960) (per curiam) (four to five months); *Deso v. London & Lancashire Indem. Co.,* 3 N.Y.2d 127, 130, 164 N.Y.S.2d 689, 692, 143 N.E.2d 889, 891 (1957) (51 days); *see also American Home Assurance Co. v. Republic Ins. Co.,* 984 F.2d 76, 78 (2d Cir.1993) (collecting New York cases holding that delays ranging from 10 to 53 days were unreasonable).

Capital Mutual's fourth-party complaint against NYMU was filed on March 11, 1992, pursuant to permission granted by the district court in an order filed on February 26, 1992. Capital Mutual was aware of the possibility that NYMU had issued an insurance policy to Blank "in May of 1988, just shortly after the third-party action against Capital Mutual was commenced." Reply Affidavit of Alan J. Pierce at 10, *New York v. Blank,* No. 88–CV–0163 (N.D.N.Y. Mar. 10, 1993) ("Pierce Affidavit"). Capital Mutual, however, concedes that it did not notify NYMU of the underlying action against Blank until "March, 1989." Fourth–Party Complaint at 12, *New York v. Blank,* No. 88–CV–0163, (N.D.N.Y. March 11, 1992). Apparently, this notification occurred through a letter from Capital Mutual to NYMU dated March 10, 1989, and received March 16, 1989. *See* Affidavit of Wilfred W. Wege and exhibit A, *New York v. Blank,* No. 88–CV–0163 (Mar. 3, 1993). This would have been approximately ten months after Capital Mutual discovered the possibility of coverage by NYMU; eleven months after Abalene and Blank filed their third-party complaint; thirteen months after the State of New York commenced the underlying action against Blank; and twenty-four months after the State of New York discovered the pesticides at the site. Capital Mutual did not bother to notify NYMU until after the district court entered a judgment on February 13, 1989, holding Capital Mutual liable to defend Blank

and finding Capital Mutual in breach of its duty to defend Blank. *See* Pierce Affidavit at 10 ("we decided not to involve New York Mutual unless and until the Court declared that Capital Mutual had a duty to defend"). We find that Capital Mutual's delay of ten months from the date they claim to have first discovered the possibility of coverage by NYMU to be unreasonable under the circumstances.

Having determined that Capital Mutual's notice to NYMU was not reasonable under the circumstances, it remains to be determined whether NYMU must demonstrate that it was prejudiced by the lack of notice. New York has adopted the "no prejudice" rule with respect to disputes between an insured and its primary insurer. *See Ogden Corp.*, 924 F.2d at 42–43. Under that rule, the insurer need not demonstrate that it was prejudiced from the insured's failure to give prompt notice. In cases involving co-insurers and in cases involving a contract of re-insurance, New York courts have refused to follow the "no prejudice" rule. *Crum & Forster*, 192 A.D.2d at 654, 596 N.Y.S.2d at 474; *Unigard Sec. Ins. Co. v. North River Ins. Co.*, 79 N.Y.2d 576, 582, 584 N.Y.S.2d 290, 292, 594 N.E.2d 571, 573 (1992). At first glance, this case—involving a dispute between successive insurers—appears similar to the cases involving co-insurers and re-insurers; and this suggests that NYMU should be required to demonstrate that it was prejudiced by Capital Mutual's failure to give prompt notice. Closer analysis, however, reveals that the rationale supporting the New York courts' decision to abandon the "no prejudice" rule in cases involving co-insurers or re-insurers does not apply to cases involving successive insurers. The Court of Appeals wrote, in *Unigard Sec.*, that the " 'no prejudice' rule does not apply to a failure to comply with the prompt notice requirement in a contract of reinsurance" because, in part, "the interests of a reinsurer and the ceding primary insurer with respect to a pending claim are generally identical." *Id.* Similarly, the Second Department in *Crum & Forster* wrote, "since the interests of the two carriers with respect to [the insured's] claim are essentially identical, [the second insurer's] claim for contribution

should not be precluded by the purported failure of [the first insurer] to receive timely notice unless some prejudice is shown." *Crum & Forster*, 192 A.D.2d at 654, 596 N.Y.S.2d at 474.

Unlike co-insurers or re-insurers, successive insurers do not insure the same risk. To be sure, successive insurers will often insure the same *type* of risk. The risk that NYMU insured from, allegedly, February 28, 1972, to February 28, 1975, was similar to the risk that Capital Mutual insured from February 28, 1985, to January 1, 1987. While no doubt *similar*, that risk could not be said to have been the *same*. Because successive insurers do not insure the same risk, their interests cannot be said to be essentially the same. While each successive insurer will have an interest in investigating the occurrence and defending the claim, each insurer will also have an interest in limiting its liability for damages by demonstrating that the bulk of the damages were incurred during a period covered by another insurer. Because the interests of successive insurers differ in this way, it would be inappropriate to depart with the "no prejudice" rule.

We find that Blank and Capital Mutual unreasonably failed to notify NYMU of the occurrence and claim underlying this appeal. This failure relieves NYMU of any duty to defend or indemnify Blank. Accordingly, we vacate that portion of the district court's opinion holding NYMU liable to contribute to the cost of Blank's defense.

### B. Allocation of Defense Costs

The district court apportioned costs as follows: National Union, 66.66%; Capital Mutual, 16.66%; and NYMU, 16.66%. *See* Order (filed Aug. 16, 1993). The district court reasoned that since only National Union insured Abalene, National Union should bear 50% of the costs of defense. The district court further reasoned that because National Union also listed Blank as a named insured that National Union should share in the costs of Blank's defense. The district court therefore allotted National Union, Capital Mutual, and NYMU each an equal share of the 50% of the total defense costs that were attributable to

Blank's defense. Thus, National Union, Capital Mutual, and NYMU were each allotted 16.66% of the costs attributable to Blank's defense. This resulted National Union bearing 66.66% of the total costs, with Capital Mutual and NYMU each bearing 16.66%.

As discussed above, however, because Blank and Capital Mutual failed to provide NYMU with reasonable notice-of-occurrence and claims, NYMU is not liable for the costs of Blank's defense. Therefore, it is necessary to reassess the apportionment of costs amongst the remaining insurers, National Union and Capital Mutual. If we were to follow the analysis of the district court, we would continue to hold National Union liable for 50% of the total costs that are attributable to Abalene plus an equal share of the costs attributable to defense of Blank. Thus, under the approach of the district court, National Union would be liable for 75% of the total costs and Capital Mutual would be liable for the remaining 25%.

We decline to follow the district court's approach, however. In similar situations, courts have ignored disparities between the policies' named insureds and apportioned costs equally between insurers. *See United States Fidelity & Guar. Co. v. Executive Ins. Co.*, 893 F.2d 517, 519 (2d Cir.1990); *J.P. Realty Trust v. Public Serv. Mut. Ins. Co.*, 102 A.D.2d 68, 476 N.Y.S.2d 325 (1st Dept. 1984), *aff'd*, 64 N.Y.2d 945, 488 N.Y.S.2d 650, 477 N.E.2d 1104 (1985).

*J.P. Realty* involved a wrongful death action against a lessor and its affiliate. The lessor and its affiliate brought an action against the lessee's insurer on the ground that the lessor and its affiliate were named by the lessee's insurer as additional insureds. The lessee's insurer brought a third-party complaint against the insurer of the lessor and the affiliate. Thus, *J.P. Realty* involved two insurers that had issued policies with different named insureds; the lessee's insurer insured the lessee, the lessor, and the lessor's affiliate while the lessor's insurer insured only the lessor and its affiliate. Notwithstanding this disparity, the New York Court of Appeals declared that the two insurers should contribute by equal shares to the defense and indemnification of the insureds. *J.P. Realty*, 102 A.D.2d at 73, 476 N.Y.S.2d at 329.

*United States Fidelity* involved personal injury actions against a property management company, W & F Building Corporation, and two of its officers, Weiss and Fried. U.S. Fidelity had issued a policy naming W & F and Fried as insureds. Executive Insurance Company had issued a policy naming Weiss and Fried as insureds. This court held that both insurance companies were to be "deemed coinsurers of Weiss, Fried and W & F" and, on the basis of "other insurance" clauses in the policies, reinstated an order of the district court directing U.S. Fidelity and Executive to "contribute equally in the defense and indemnification of Weiss, Fried and W & F Building Corp." *United States Fidelity*, 893 F.2d at 518.

■ We find that under the circumstances of this case, National Union and Capital Mutual are to be deemed coinsurers of Blank and Abalene. It is true that National Union's policy names both Abalene and Blank as insureds while Capital Mutual names only Blank. As we discussed above, however, Capital Mutual's policy provided coverage to Blank not only in his individual capacity but also "with respect to the conduct of a business of which he is the sole proprietor." Further, we note that Blank and Abalene are represented in this action by one law firm and that bills submitted by that law firm have not distinguished between costs attributable to the defense of Abalene and costs attributable to the defense of Blank. *See* Affidavit of David Holmes, exhibit 1, *New York v. Blank*, No. 88–CV–0163 (June 18, 1993). This suggests that Blank, as the sole shareholder, president, and treasurer of Abalene, was so closely involved in the affairs of Abalene that the defense of Blank is, for all practical purposes, indistinguishable from the defense of Abalene.

■ We further find that National Union and Capital Mutual are to contribute by

equal shares to the defense of Abalene and Blank. As in the cases of *J.P. Realty* and *United States Fidelity,* both policies contain other insurance clauses that permit contribution by equal shares when other insurance policies similarly permit contribution by equal shares. Capital Mutual's policy contains language virtually identical to the provisions at issue in *J.P. Realty:*

> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below
>
> 1. Contribution by Equal Shares: If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
>
> 2. Contribution by Limits: If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collective insurance against such loss.

National Union's policy contains similar language:

> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

> If any of the other insurance does not permit contribution be equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Under the law of New York, these clauses require us to find that National Union and Capital Mutual should contribute by equal shares to the defense of Abalene and Blank. *J.P. Realty,* 102 A.D.2d at 73, 476 N.Y.S.2d at 329. Accordingly, we vacate the order of the district court entered on August 16, 1993, and direct that National Union and Capital Mutual contribute equally to the defense of Abalene and Blank.

## IV. Conclusion

We affirm the orders of the district court entered on February 13, 1989; September 5, 1990 (as amended October 3, 1990); and October 10, 1991, in so far as they hold National Union and Capital Mutual liable for the defense of Abalene and Blank. We vacate the order of the district court entered on May 5, 1993, holding NYMU liable to provide a defense and direct the district court to grant NYMU's cross motion for summary judgment of March 3, 1993. Finally, we vacate the order of the district court entered on August 12, 1993, apportioning costs amongst National Union, Capital Mutual, and NYMU and direct the district court to apportion costs equally between National Union and Capital Mutual.

Judgment in accordance with opinion.