GERALD A. KNIGHT et al., Respondents, *v.* EDWARD P. KNIGHT, Appellant.

Second Department, February 3, 1969.

*James J. Richman* (*Jacob W. Friedman* of counsel), for appellant.

*John A. Needham* for respondents.

HOPKINS, J. The action is in partition. The plaintiffs are the children of the defendant. They claim to be tenants in common with the defendant in the one-family home acquired in 1947 by the defendant and their mother, now deceased, as tenants by the entirety. Their interests are alleged to have arisen in their capacity as distributees of the estate of their mother, who died intestate.

If no more were contained in the complaint, it would have to be dismissed as insufficient. On the death of one tenant by the entirety, the other becomes the sole owner of the property through the original grant (*Hiles* v. *Fisher,* 144 N. Y. 306; *Matter of Klatzl,* 216 N. Y. 83). But the complaint alleges more.

The plaintiffs state that in 1959 the defendant obtained a Mexican divorce against their mother, dissolving the marriage, and that thereafter he married another woman. Hence, at that time, so the complaint alleges, the defendant and their mother were transformed into tenants in common of the property, as the divorce, in dissolving the marriage bond, destroyed as well the tenancy by the entirety dependent on the unity of the spouses under their marriage (*Yax* v. *Yax,* 240 N. Y. 590; *Hosford* v. *Hosford,* 273 App. Div. 659), and so authorized the partition of the property (*Chew* v. *Sheldon,* 214 N. Y. 344, 348).

The defendant does not share this conception of his legal rights. He moved to dismiss the complaint (CPLR 3012, subd. [b]; 3211, subd. [a], par. 7; Real Property Actions and Proceedings Law, § 901), stating by affidavit that the Mexican divorce he had obtained was ex parte. He argued that the divorce was therefore powerless to affect the title of the property held by himself and his first wife as tenants by the entirety.

Moreover, he alleged that his first wife, subsequent to the divorce, had brought proceedings against him, as a result of which in 1962 a County Court of New Jersey had issued an order directing him to pay $100 every two weeks for her support.[1] Indeed, according to him, she had consistently contended during her lifetime that her marriage to him remained in full force.

The plaintiffs did not dispute the defendant's allegations of fact. Rather, they opposed the motion on the theory that the defendant, having procured the divorce, having remarried in reliance on the divorce, and having failed since the divorce to support their mother or them properly, was estopped from now asserting that the divorce was invalid.

Special Term denied the motion, holding that the complaint stated a cause of action.

The defendant's appeal reiterates his claim before Special Term that the void divorce could not alter the tenancy by the entirety. Moreover, he resists the charge of estoppel against him, first by maintaining that no grounds for its establishment exist, and second by countering with a contention that the plaintiffs are themselves estopped from pleading the validity of the divorce as a consequence of the conduct of their mother who had always challenged it.

The defendant's first argument has the attraction of logic. If the void decree of divorce is useless for any purpose, then the tenancy by the entirety could not be reduced to a tenancy in common and the plaintiffs' suit fails (*Vollaro* v. *Vollaro*, 144 App. Div. 242). Yet the argument cuts against the grain of the realities. The defendant invoked the jurisdiction of the Mexican court for a divorce, after abandoning his wife and the marital abode; he caused the entry of the decree granting the divorce and did not return to his wife; and shortly after the entry of the decree he remarried. Though logic may be

---

1. The defendant also alleged that both the Veterans' Administration (as to a disability pension) and the Social Security Administration (presumably as to social security benefits) had ruled that the ex parte divorce did not change the marital status of the first wife. We are not controlled, of course, by these rulings.

on the side of the defendant, the truth is that he has acted as though his marriage with the plaintiffs' mother had ended with the entry of the Mexican decree.

Our courts have not treated the maneuvers of disenchanted spouses in seeking foreign divorces with the exercise of such an unyielding and lifeless logic. The defendant's premise that the foreign decree is void for all purposes mistakes the rule. A foreign decree, though void for lack of jurisdiction, may still form the body of an estoppel against the party who caused it to be issued as to a private claim or demand arising out of the marriage (*Starbuck* v. *Starbuck*, 173 N. Y. 503; *Hynes* v. *Title Guar. & Trust Co.*, 273 N. Y. 612).[2] The defendant's premise in point of law is strictly confined to the impotence of the decree to affect the marital status itself (*Querze* v. *Querze*, 290 N. Y. 13, 17; cf. *Lynn* v. *Lynn*, 302 N. Y. 193, 200–203; *Vanderbilt* v. *Vanderbilt*, 1 N Y 2d 342, 351). The distinction, though criticized (Clark, Estoppel Against Jurisdictional Attack on Decrees of Divorce, 70 Yale L. J. 45, 50), recognizes the difference, for example, between a claim for alimony as arising out of the marital status, and thus without the benefit of estoppel (*Vose* v. *Vose*, 280 N. Y. 779), and a claim for a distributive share of a deceased spouse's estate as a private demand and thus entitled to the benefit of estoppel (*Starbuck* v. *Starbuck, supra*).[3]

Indeed, the rule in *Starbuck* has hardened into public policy by the enactment of section 50 of the former Decedent Estate Law[4] (L. 1965, ch. 245, § 1), clause (b) of which (now EPTL 5-1.2, subd. [a], par. [3]) removed from a spouse who had obtained a foreign divorce not recognized as valid in this State the right to a distributive share of his deceased spouse's estate and other rights conferred by statute on a surviving spouse (cf. *Matter of Rathscheck*, 300 N. Y. 346, 350–351).[5] Although the right of exclusive title of a surviving tenant by the entirety was not derived from the former Decedent Estate Law, it

---

2. The estoppel runs against the truth, that is, the judgment remains void, and it is the right to prove the truth that is lost (cf. *Packer* v. *Packer*, 6 A D 2d 464, 468).

3. The distinction may be rationalized under the view that the State's interest in preserving the marital status of its residents forbids the use of estoppel while the spouses are living; when the marriage is terminated by the death of one spouse, the marital status no longer is in issue, and estoppel is a permissible device to prevent injustice.

4. The Decedent Estate Law, which was operative at the times here in question, was repealed and replaced by EPTL in 1966, effective September 1, 1967 (L. 1966, ch. 952; see EPTL 14-1.1, 14-3.1).

5. See, also, subdivision b of section 87 of the former Decedent Estate Law, which section was repealed and replaced in part by section 50 of said law (by L. 1965, ch. 245, §§ 1, 3); and legislative note to said repealer.

retained many of the characteristics of the rights which sprang from the statute in that title to the property passed on the death of a spouse. On the other hand, the right of a surviving spouse under the tenancy is not a statutory incident of the marital status as is alimony (cf. *Querze* v. *Querze,* 290 N. Y. 13, 17, *supra*).

The defendant focuses his attack on the use of estoppel against him by noting that his first wife did not change her position to her prejudice in reliance on his act in procuring the invalid divorce. A true estoppel, he urges, requires a change in position and consequent injury by the party claiming estoppel. True, an equitable estoppel often embraces the elements of reliance and prejudice, particularly in commercial transactions (see, e.g., *Byrne* v. *Barrett,* 268 N. Y. 199; *First Nat. Bank of Morrisville* v. *Starke Design,* 11 A D 2d 595). But the estoppel which arises from the inconsistent positions taken by a party in present or subsequent litigation assumes a different character. "A party cannot avail himself of a defense or of a right to recover by means of an invalid decree or judgment obtained by him; but, on the other hand, he may not be heard to impeach a decree or judgment which he himself has procured to be entered in his own favor" (*Starbuck* v. *Starbuck,* 173 N. Y. 503, 508, *supra*; cf. *Horn* v. *Bennett,* 253 App. Div. 630, 631). As a leading text expressed it, this type of estoppel falls within the "doctrine of preclusion", hindering a party from framing pleadings or adopting theories at war with a position taken in prior legal proceedings (1 Foster-Freed, Law and the Family, § 9:10, pp. 343–345). Hence, it is not necessary that the prior judgment, whether valid or invalid, influence the other party to act to his detriment; it is enough that the judgment may do so.

The defendant argues that our recent decisions (*Anello* v. *Anello,* 22 A D 2d 694; *Burford* v. *Burford,* 24 A D 2d 491; *Topilow* v. *Peltz,* 25 A D 2d 874) should constrain us to hold that his tenancy by the entirety persisted in the face of the invalid decree. We find no contradiction between these cases and the application of an estoppel against the defendant. In *Anello* the reverse was the condition of the parties: a husband who had obtained an invalid decree sued for partition against his wife who was a tenant by the entirety. We held that partition would not lie at the behest of the spouse who claimed the benefit of an invalid decree. In *Burford* the factual pattern was similar. In *Topilow* both spouses remarried following the entry of the void decree. We held that each spouse had acted to destroy the marital status on which the tenancy by the entirety existed, and neither could be heard to say that their marriage

still continued. Here it is the defendant who seeks to ignore both the divorce which he procured and his remarriage on the strength of that divorce. Moreover, in the appeal at bar, by no means could the marital status be at stake, since the defendant's first wife is deceased.[6]

The defendant's final argument rests primarily on a counter thrust of estoppel. If he is estopped, he argues, so was his first wife estopped, and the plaintiffs, whose rights are derived from her, inherit the estoppel as well (cf. *Meeder* v. *Provident Sav. Life Assur. Soc.*, 171 N. Y. 432, 436; *Matter of Lindgren*, 293 N. Y. 18, 22–23; *Feinberg* v. *Allen*, 143 App. Div. 866, affd. 208 N. Y. 215). The estoppel in his favor is said to have arisen from the proceedings instituted by the first wife, culminating in an order directing him to make support payments to her. Thus, according to the defendant, the plaintiffs' mother affirmed the continuance of the marriage and the plaintiffs are bound by her election.

The presence of opposing estoppels, in the language of some courts, sets the matter at large, as if neither estoppel were offered (31 C. J. S., Estoppel, § 65; 21 N. Y. Jur., Estoppel, § 71). To a degree, the cancellation of equities by mutual estoppels resting on different bases suggests a result coming out of a pure conceptualism, for the weight and effect of the respective estoppels apparently are not measured under the rule.

We think, however, that the rule has no bearing on this appeal. First, the order issued by the County Court in New Jersey would not be effective as *res judicata* in this action, since identity both of the jurisdiction of the courts and of the causes of action are absent from this case and the proceedings prosecuted in New Jersey (*Loomis* v. *Loomis*, 288 N. Y. 222, 224–225). Second, the rule would effect the strange outcome that the defendant's disability, born of public policy, to assert a private claim stemming from the marriage would vanish simply because the plaintiffs' mother insisted on a right incident to the marriage (akin to alimony) after the void divorce was obtained. Public policy cannot be so easily flouted.

For the reasons stated, the order denying the defendant's motion to dismiss the complaint should be affirmed, with $10 costs and disbursements.

BENJAMIN, J. (concurring). I concur with the opinion of Mr. Justice HOPKINS, which is based on the law as it now exists. However, I wish to express a hope that the Court of Appeals

---

6. A matrimonial action, as described in section 232 of the Domestic Relations Law, is the usual means by which marital status is determined.

will soon re-examine this question of estoppel (as expressed in *Querze* v. *Querze*, 290 N. Y. 13, 17–18) and restate the rule so as generally to bar the procurer of a foreign divorce from attacking it in order to defeat his new wife's claim for support. Such restatement of the rule would not only be equitable but it could be rationally justified on the ground that the right of support is a property right readily separable from the marital status.

CHRIST, Acting P. J., BRENNAN and MUNDER, JJ., concur with HOPKINS, J.; BENJAMIN, J., concurs, with a separate memorandum.

Order of the Supreme Court, Queens County, dated November 29, 1967, affirmed, with $10 costs and disbursements.