■ KIMCO OF NEW YORK, INC., Appellant, v DWIGHT DEVON, Respondent.—In an action, *inter alia*, to compel specific performance of an option to purchase certain real property, the plaintiff appeals, as limited by its brief, from so much of an order of the Supreme Court, Nassau County (Christ, J.), entered March 23, 1989, as denied that branch of its motion which was for partial summary judgment on the issue of liability.

Ordered that the order is reversed insofar as appealed from, with costs, that branch of the plaintiff's motion which was for partial summary judgment is granted, and the matter is remitted to the Supreme Court, Nassau County, for a trial on the issue of damages and entry of an appropriate judgment directing the defendant to convey title to the subject real property to the plaintiff pursuant to the terms of the option dated September 9, 1975.

The plaintiff commenced this action in November 1987 to enforce an option to purchase commercial property owned by the defendant and to recover damages arising from the defendant's breach of that option. The plaintiff is the assignee of the option.

In 1975 the defendant's predecessor in interest, his father Philip Devon, in connection with leasing the property, exe-

cuted a separate agreement with the plaintiff's predecessor, Raymond Kane, giving Kane, his heirs, and assigns the option to purchase the property for $5,000,000. The option was exercisable 12 years from January 1, 1976, or on January 1, 1988. Philip Devon died in 1984. The defendant became one of three executors of his estate. In July 1985 the executors petitioned the Surrogate for permission to allow the defendant to withdraw as an executor and to allow him to purchase the real property from the estate for $5,250,000 pursuant to a proposed contract of sale submitted to the Surrogate. The contract specifically provided that the property would be sold subject to the option. In addition, the executors' petition and an appraisal report submitted in support, asserted that the option severely limited the value of the property and represented that the option was valid and binding. By order dated November 26, 1985, about two years prior to the date on which the option could be exercised, the Surrogate approved the sale of the property to the defendant "in accordance with the terms of the contract of sale".

In support of its motion for partial summary judgment directing the defendant to sell the property pursuant to the option, the plaintiff argued that the defendant should be estopped from now asserting that the option is invalid and unenforceable since he adopted a contrary position in the Surrogate's Court, recognizing the validity of the option in order to obtain the Surrogate's authorization for the sale of the property to him.

The doctrine of estoppel against inconsistent positions applies to this case. This doctrine precludes a party from framing his pleadings in a manner inconsistent with a position taken in a prior judicial proceeding *(see, Neumann v Metropolitan Med. Group,* 153 AD2d 888; *Environmental Concern v Larchwood Constr. Corp.,* 101 AD2d 591; *see also, Kasmarski v Terranova,* 115 AD2d 640). It is to be distinguished from collateral estoppel which assumes a full and fair opportunity to litigate the issue in the prior action *(Kaufman v Lilly & Co.,* 65 NY2d 449, 455). "The doctrine rests upon the principle that a litigant 'should not be permitted * * * to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise' * * * 'The policies underlying preclusion of inconsistent positions are "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings" ' " *(Environmental Concern v Larchwood Constr. Corp.,* 101 AD2d 591, 593, *supra).* Furthermore, this court has

held that the doctrine: "will be applied where a party to an action has secured a judgment in his or her favor by adopting a certain position and then has sought to assume a contrary position in another action simply because his interests have changed" *(Anonymous v Anonymous,* 137 AD2d 739, 741; *see also, Davis v Wakelee,* 156 US 680, 689; *Neumann v Metropolitan Med. Group, supra,* at 889; *Knight v Knight,* 31 AD2d 267, 271). The doctrine is invoked to estop parties from adopting such contrary positions because the judicial system "cannot tolerate this 'playing fast and loose with the courts' " *(Environmental Concern v Larchwood Constr. Corp., supra,* at 594, quoting from *Scarano v Central R. R. Co.,* 203 F2d 510, 513).

Although the application of equitable estoppel is often premised upon a showing of reliance and prejudice, the estoppel which arises from the inconsistent position taken by a party in litigation is of "a different character" *(see, Knight v Knight, supra,* at 271). Thus, contrary to the defendant's contentions, Kimco need not show reliance on the Surrogate's Court proceedings to invoke the doctrine of estoppel against inconsistent positions. The fact that the Surrogate's order was premised, in part, on the defendant's representations regarding the validity of the option is sufficient to preclude the defendant "from framing pleadings or adopting theories at war with a position taken in prior legal proceedings" *(Knight v Knight, supra,* at 271).

The petition submitted to the Surrogate directly contradicts the allegations set forth in the defendant's answer and affirmative defenses to the instant action. The verified petition alleged that the current fair market value of the subject property, a shopping center, was only $5,000,000 because, *inter alia,* it was burdened by the option permitting the plaintiff's predecessor, or his assignees, to purchase the property for that amount on January 1, 1988. According to the petition, Dwight Devon offered to purchase the property "subject to the option" for the sum of $5,250,000 "because he [was] willing to speculate with his own funds that the profits generated from his investment [would] exceed the cost of the required capital improvements even if the option [was] exercised". Annexed to the petition was an appraiser's report which stated the following: "this option is binding and has a definite effect upon the valuation of this property. A fair market purchaser of this property would realize he might only have income for six months from the operation of the property and then have to sell the property to the tenant for $5,000,000. This limited the future income that the purchaser could realize from this

property". Additionally, a guardian ad litem appointed by the Surrogate for the infant and unborn beneficiaries of the estate recommended that the property be sold to Dwight Devon for $5,250,000, because "the estate, were it not to sell [to Dwight Devon], would be subject to the exercise of the option and would stand to net less money at a later point in time". A second appraisal apparently obtained by one of the executors assessed the property as having a fair market value of $6,580,000 if it were "free and clear" of the option. Significantly, the latter appraisal was not submitted to the Surrogate. Relying on the unopposed petition and supporting documents, the Surrogate approved the sale to Dwight Devon for the sum of $5,250,000.

In the instant action the defendant denies the validity of the option in his answer and various affidavits, claiming that although the Surrogate's Court was not aware of it, he always disputed the validity of the option. His answer sets forth eight affirmative defenses which assert that the option is invalid on the grounds of fraud, duress and breach of fiduciary duty. We view these defenses with skepticism since they are premised upon transactions between the plaintiff's deceased father and the original option holder which occurred in 1973 and 1975, and were never challenged during the apparently peaceful relationship that continued between the original parties to the option until Philip Devon's death. This conceded history strongly suggests that the defendant's defenses would be found meritless if they were not otherwise precluded by application of the doctrine of estoppel. We find that defendant's adoption of inconsistent positions in pursuit of his own interests has sufficiently manipulated and impaired the dignity of judicial proceedings to require that he be estopped from claiming that the option is invalid and unenforceable. The defendant, having purchased the property at a bargain price subject to the option, cannot be heard now to deny its validity.

We therefore find that the plaintiff is entitled to partial summary judgment on the issue of liability. Accordingly, the matter is remitted to the Supreme Court for a trial on the issue of damages and entry of an appropriate judgment directing the defendant to convey title to the subject real property to the plaintiff pursuant to the terms of the option dated September 9, 1975. Lawrence, J. P., Kunzeman, Rosenblatt and Miller, JJ., concur.