891 F.Supp. 978 (1995)
AXA MARINE & AVIATION INSURANCE (UK) LIMITED, and the Marine Insurance Co., Limited, Plaintiffs,
v.
SEAJET INDUSTRIES, INC., Sea Jet Trucking, Inc., and A.P.A. Warehouse, Inc., Defendants.
No. 94 Civ. 1191 (PKL).
United States District Court, S.D. New York.
July 18, 1995.
*979 Mendes & Mount, New York City (Brendan J. Malley, of counsel), for plaintiffs.
Lynch Rowin Novack Burnbaum & Crystal, P.C., New York City (Mark I. Silberblatt, of counsel), for defendants.

OPINION AND ORDER
LEISURE, District Judge:
This is an action brought by Axa Marine and Aviation Insurance (UK) Limited and the Marine Insurance Co., Limited ("Underwriters") against Sea-Jet Industries, Inc., Sea-Jet Trucking Corp.,[1] and A.P.A. Warehouse, Inc. ("Insureds"). Plaintiffs seek a declaratory judgment stating that they are not required to defend and indemnify Insureds with respect to claims in an action in New York Supreme Court.[2]
Defendants now move this Court for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on their first counterclaim, requiring underwriters to defend and indemnify them in the State Action, and on their second counterclaim, holding Underwriters liable for the legal expenses that Insureds incurred in this action and the State Action. Plaintiffs, in turn, cross-move for summary judgment dismissing defendants' first and second counterclaims and declaring that Underwriters are relieved of any duty to defend or indemnify Insureds in the State Action. For the reasons stated below, defendants' motion is denied and plaintiffs' motion is granted.

BACKGROUND
The facts relevant to the instant motion are undisputed. Insureds owned and operated a trucking company and a warehouse facility with offices and facilities in Brooklyn, New York. See Defendant Mem. at 3. In 1990, Insureds obtained from Underwriters liability insurance with respect to Insureds' operations for the 12 month period commencing March 29, 1990. Id. The insurance was placed with Underwriters through Jeffrey Coates and Associates Limited ("Coates"), Coverage Consultants, Inc. ("Coverage Consultants") and M & G Brokerage, Inc. ("M & G").
The relevant liability insurance policy (the "Policy") provided in relevant part that Underwriters were obligated:
A. TO PAY ON BEHALF OF THE INSURED, all sums, subject to the limit of the Company's liability hereinafter provided, for which the Insured shall become legally obligated to pay as damages by reason of the liability imposed by law on the Insured as a Warehouseman or Bailee, *980 because of Injury to, loss of or destruction of personal property of others whilst in the care custody or control of the Insured and which occurred during the term of this policy;
B. TO DEFEND, in the name and on behalf of the Insured any claim or suit against the Insured as a Warehouseman or Bailee alleging loss, damage, or destruction to personal property of others whilst in the care, custody or control of the Insured and seeking damages on account thereof, even if such is groundless, false or fraudulent, but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company ...
The policy also provided:
E. Notice of Claim. If any claim(s), whether groundless or not, be made against the Insured on account of loss of or damage to property, the Insured shall notify the Company as soon as practicable and if suit is filed against the Insured to enforce any claim(s), the Insured shall immediately forward to the Company all summons or other notice(s) served upon the Insured.
Defendant Mem. at 3-4 (quoting the Policy).
On December 5, 1990, an armed robbery (the "Robbery") took place at Insureds' Brooklyn facilities, and six container loads of merchandise were stolen. See Defendant Mem. at 4. Insureds notified Coverage Consultants, and Underwriters, in turn, were notified. Id. Between December 11, 1990 and December 19, 1990 an adjuster, U.S. Adjustment ("Adjuster") was retained. Id. at 5. Adjuster conducted an investigation of the Robbery and recommended retaining legal counsel. Id. at 6.
Sometime after November 12, 1991, an action (the "Good and Plenty Action") arising from the Robbery was commenced by Good and Plenty Fashions, Inc. in New York Supreme Court against A.P.A. Warehouses, Inc. On or about February 19, 1992, another action (the "Skiva Action") arising from the Robbery was commenced by Skiva International, Inc. also in New York Supreme Court. Underwriters were notified of both of these actions and undertook the defense of both. Underwriters appointed the law firm of Marcigliano & Campise ("M & C") to represent Insureds. See Defendant Mem. at 11.
Sometime after December 20, 1991, Insureds received a summons in an action in New York Supreme Court brought by American Motorists Insurance Company as subrogee of Cherry Stix, Ltd. (the "American Motorists Action"). "Although it would have been standard practice for the Insureds to forward such summons to Coverage Consultants (as done in the Good and Plenty and Skiva International Actions), there is no record that such summons was in fact forwarded. ... [T]he Insureds took no further action with respect to the American Motorists Action." Defendant Mem. at 12. On March 30, 1992, counsel for American Motorists wrote Insureds and informed them that a motion for default would be brought within thirty days. See Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff Mem.") at 4. On or about July 20, 1992, American Motorists served a motion for default judgment in the amount of $595,032. Id. at 5.
Insureds failed to take any action with respect to these notices and failed to notify Underwriters. On September 16, 1992, a default judgment in the sum of $595,032 was entered against Insureds. See Plaintiff Mem. at 5. At this point, Insureds notified Underwriters of the American Motorists Action, and Underwriters proceeded to appoint M & C, under a reservation of rights, to represent Insureds in that action. M & C successfully moved to vacate the default judgment. While the motion to vacate the default judgment was pending, however, Underwriters changed their position to an out-right declination of coverage based on Insureds' failure to give notice of the claim as soon as practicable and Insureds' failure to forward suit papers.
On or about June 26, 1993, M & C moved by order to show cause to withdraw as Insureds' counsel in the American Motorists *981 Action.[3]See Defendant Mem. at 15. On December 3, 1993, the New York Supreme Court denied M & C's motion, holding that such a motion was not a proper mechanism for determining Underwriters' obligations to Insureds. Id. On or about January 18, 1994, M & C served an answer in the American Motorists Action and has continued to represent Insureds in that action as well as in the Good and Plenty and Skiva actions. Id. at 16.[4]
Underwriters commenced the instant action on or about February 23, 1994. They contend that Insureds breached the Policy notice provisions by failing to transmit the summons in the American Motorists action, that Insureds allowed a default judgment to be taken in that action, and that Underwriters, therefore, are not obligated to defend or indemnify Insureds in that action.

DISCUSSION

I. The Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only `after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Thornton v. Syracuse Sav. Bank, 961 F.2d 1042, 1046 (2d Cir.1992) (quoting Celotex, 477 U.S. at 322, 106 S.Ct. at 2552); accord Irvin Indus., Inc. v. Goodyear Aerospace Corp., 974 F.2d 241, 245 (2d Cir.1992).
"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Id.; accord Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir.1991); see also Lang, 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir.1991) ("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.").
The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id., 477 U.S. at 249, 106 S.Ct. at 2511.
The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and of identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. at 2553. Once a motion for summary judgment properly is made, however, *982 the burden then shifts to the nonmoving party, which "`must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)); accord Brass v. American Film Technologies, Inc., 987 F.2d 142 (2d Cir.1993). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48, 106 S.Ct. at 2510 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a `scintilla of evidence,' and more than `some metaphysical doubt as to the material facts.'" Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir.1990) (quoting Anderson, 477 U.S. at 252, 106 S.Ct. at 2512, and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)), cert. denied, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (citations and quotation omitted); see also Gnazzo v. G.D. Searle & Co., 973 F.2d 136, 138 (2d Cir.1992) (the court must "consider the record in the light most favorable to the non-movant. However, the non-movant may not rest upon the mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (quotation and citations omitted). The Court draws all reasonable inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

II. Late Notice

The parties agree that this Court must apply New York law in deciding the instant motion. Cf. New York v. Blank, 27 F.3d 783, 788 (2d Cir.1994); Olin Corp. v. Consolidated Aluminum Corp., 807 F.Supp. 1133, 1140 (S.D.N.Y.1992), aff'd in part and vacated in part, 5 F.3d 10 (2d Cir.1993). "[U]nder New York law, an insured has an obligation to comply with the notice-of-occurrence and notice-of-claims provisions of an insurance policy." Blank, 27 F.3d at 793. "Where the insured fails to comply with these conditions, the insurer is relieved of its duty not only to indemnify, but also to defend the insured." Id.; see Olin Corp. v. Insurance Co. of North America, 743 F.Supp. 1044, 1055 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir.1991) (per curiam).
In the instant action, the Policy, in relevant part, provides:
If any claim(s), whether groundless or not, be made against the Insured on account of loss of or damage to property, the Insured shall notify the Company as soon as practicable and if suit is filed against the Insured to enforce any claim(s), the Insured shall immediately forward to the Company all summons or other notice(s) served upon the Insured.
Defendant Mem. at 4 (quoting the Policy) (emphases added).
Insureds admit that they did not comply with the Policy requirements in that they delayed approximately ten months in notifying Underwriters of the American Motorists Action. They further acknowledge that there was no valid excuse for the delay. Insureds contend, however, that their non-compliance should not excuse Underwriters from their obligations because Underwriters were not prejudiced by the delay.
The Court notes, however, that Insureds' "failure to provide notice within a reasonable time without a valid excuse for delay constitutes a complete defense to a third-party complaint by the insured[s] to compel the insurer to bear the costs of defense in the underlying action." Blank, 27 F.3d at 793; see Christiania Gen. Ins. Corp. v. Great American Ins. Co., 979 F.2d 268, 275 (2d *983 Cir.1992).[5] New York courts have held that the question of whether notice was given within a reasonable time may be determined as a matter of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay. See Blank, 27 F.3d at 795. Accordingly, this Court finds that notice was not reasonably given and that Insureds violated the conditions of the Policy.[6]
This Court finds unpersuasive Insureds' argument that Underwriters should nonetheless be required to satisfy their obligations under the Policy because they were not prejudiced by Insureds' failure to provide notice within a reasonable time. New York has adopted the "no prejudice" rule with respect to disputes between an insured and its primary insurer. Id. at 797. "Under that rule, the insurer need not demonstrate that it was prejudiced from the insured's failure to give prompt notice." Id. Under New York law, the notice provisions of an insurance policy are a condition precedent to the insurer's liability, and the insured's failure to comply with those provisions relieves the insurer of liability, regardless of whether the insurer was prejudiced by the delay. Id.; Olin Corp. v. Insurance Co. of North America, 966 F.2d 718, 723 (2d Cir.1992); Commercial Union, 822 F.2d at 271; Utica Mutual Insurance Co. v. Fireman's Fund Insurance Cos., 748 F.2d 118, 121 (2d Cir.1984); Christiana General Ins. Corp. v. Great American Ins. Co., 745 F.Supp. 150, 157 (S.D.N.Y.1990) (Leisure, J.).
Insureds' notice to Underwriters of the occurrence of the Robbery itself and of the two other actions arising from the Robbery does not excuse their failure to notify Underwriters of the American Motorists Action. In addition to the ability to conduct an early investigation,[7] prompt notice of a claim allows insurers to set appropriate reserves, to prevent fraudulent claims, to exercise early control of litigation, and to effect settlements. These goals cannot be achieved by notice of the occurrence itself. They can only be accomplished by notice of the particular claim.[8]
Accordingly, this Court finds that Insureds' delay in notifying Underwriters of the American Motorists claim was unreasonable as a matter of law and relieves Underwriters from their obligation, pursuant to the Policy, of defending and indemnifying Insureds in the American Motorists Action.

III. Estoppel

Having found that Insureds' failure to provide notice of the American Motorists claim relieves Underwriters of their responsibilities *984 to Insureds under the Policy, this Court must now examine Insureds' contention that Underwriters should be estopped from disclaiming coverage. Insureds argue that representations made by M & C to the Supreme Court of New York, during proceedings to determine whether the default judgment against Insureds should be vacated, estop Underwriters from denying insurance coverage. Underwriters, in turn, maintain: (1) that M & C represented only Insureds and not Underwriters and therefore representations made by M & C cannot estop Underwriters, and (2) that no estoppel should result from M & C's assertions. This Court, finding that M & C's prior avowals to the New York Court are insufficient to require estoppel, need not decide whether M & C represented only Insureds or both Insureds and Underwriters.
"[A] litigant should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise." National Westminster Bank v. Ross, 130 B.R. 656, 672 (S.D.N.Y.1991), aff'd, 962 F.2d 1 (2d Cir.1992); see Kubin v. Miller, 801 F.Supp. 1101, 1111 (S.D.N.Y.1992). "The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." Bates v. Long Island R.R., 997 F.2d 1028, 1037 (2d Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993).
"The policies underlying preclusion of inconsistent positions are general consideration[s] of the orderly administration of justice and regard for the dignity of the judicial proceedings." Kimco of New York, Inc. v. Devon, 163 A.D.2d 573, 574, 558 N.Y.S.2d 630, 632 (2d Dep't 1990) (citations omitted). This doctrine "will be applied where a party to an action has secured a judgment in his or her favor by adopting a certain position and then has sought to assume a contrary position in another action simply because his interests have changed." Id. (citations omitted). Lastly, this Court notes that the "doctrine is invoked to estop parties from adopting such contrary positions because the judicial system cannot tolerate this playing fast and loose with the courts." Id. (citations omitted).
Insureds argue that in the American Motorists Action, M & C represented to the Supreme Court of New York, on their motion to vacate the default judgment, that coverage under the Policy was in effect and defendants were amply insured against plaintiff's claims. Specifically, M & C stated:
7. Lastly, plaintiff's contend that they will be prejudiced if the default is vacated, in the event judgment is later entered, but uncollectible against the defendants.... defendants have been in business for over 10 years and have a very large warehousing operation. Further, the defendants are insured under a policy of insurance with Certain Underwriters at Lloyds, ... which, in view of the limitations of liability available to defendants, and the unlikely success of plaintiff's [sic] on the merits, are ample in this matter....
8. Coverage under the policy to defendants for legal liability arising out of the incident which forms the basis of this action, has not, to date been declined by underwriters.
9. Defendants are therefore amply insured for these losses. Further upon information and belief, all parties with an interest in the incident are represented in the actions commenced to date, and no further claims or actions are anticipated against the defendants.
Defendant Mem. at 28-29 (quoting a reply affirmation submitted by M & C in the American Motorists Action) (emphasis omitted). Insureds observe that the New York Supreme Court stated:
With respect to insurance coverage, defendants claim that their coverage for legal liability arising out of the incident has not been declined and they are amply insured for the losses herein.
Defendant Mem. at 29.
This Court notes that a litigant should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise. See, e.g., Environmental Concern, Inc. v. Larchwood *985 Constr. Corp., 101 A.D.2d 591, 476 N.Y.S.2d 175, 176-77 (2d Dep't 1984). In the instant action, however, Insureds have not demonstrated that the New York Supreme Court found that Underwriters would continue to insure Insureds or that Underwriters had led that Court to so find. The New York Supreme Court merely noted that "defendants claim that their coverage for legal liability arising out of the incident has not been declined." See Defendant Mem. at 29 (emphasis added). Such a statement does not comprise a finding of fact, but rather an acknowledgement of the argument of one of the parties.[9] The Supreme Court's ultimate finding that the default should be vacated could have rested on any number of factual findings supported by the statements that Insureds quote.[10]
In fact, the State Court specifically found that the default judgment should be vacated because Insureds had demonstrated that any delay in responding to suit papers had been unintentional and that defendants had substantial meritorious defenses.[11]See Affidavit of Harold Pretter, sworn to on February 28, 1995, ("Pretter Aff.") at 15. Consequently, Insureds have not shown that the New York Supreme Court relied on M & C's representation concerning continued insurance coverage or that there was a finding of continued coverage by that Court.
In addition, as Insureds illustrate, M & C specifically stated that Insureds' coverage had not been declined by Underwriters to date. Such a statement alerted the New York Court to the possibility that coverage would be declined prior to an ultimate ruling in the case and demonstrates that M & C was not deceiving the Court into finding that the default should be vacated based on a guaranteed continuation of insurance. M & C's statement that, as of the time of the motion to vacate the default, insurance coverage had not yet been declined is not inconsistent with Underwriters' later declination.[12]
In sum, Insureds have not demonstrated that the New York Supreme Court vacated the default judgment based on M & C's representations concerning the existence of insurance, or that the State Court made any finding of fact concerning insurance. Instead, the New York Court explicitly based its decision to vacate the default on the existence of meritorious defenses and the fact that Insureds' delay was unintentional. While that Court did not credit plaintiff's argument that if the default were vacated a judgment would be rendered uncollectible, there are a number of reasons why the State Court may have so found. In fact, M & C specifically indicated the possibility of future declination by stating that insurance had not been declined to date.
*986 Accordingly, this Court finds that Insureds have not met their burden of establishing that estoppel is appropriate to prevent Underwriters from declining coverage of Insureds in the American Motorists Action.[13]

CONCLUSION
For the reasons stated above, defendants' motion is denied, and plaintiffs' cross-motion is granted. The Court finds that Insureds' breach of the insurance policy relieves Underwriters of any duty to defend or indemnify Insureds in the underlying state court action.
SO ORDERED.
NOTES
[1] Apparently sued incorrectly as SeaJet Industries, Inc. and Sea Jet Trucking, Inc., respectively. See Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendant Mem.") at 1.
[2] American Motorists Insurance Company v. A.P.A. Warehouse, Inc. and Sea-Jet Trucking & A.P.A. Warehouses, Inc., Index no. 6970/92 (the "State Action").
[3] The basis for the motion was that Underwriters had declined coverage in the case and would no longer pay M & C's fees. See Defendant Mem. at 15.
[4] In fact, on February 23, 1995, upon stipulation of the parties, an order was entered consolidating all three of the actions under a single caption and index number. See Defendant Mem. at 16.
[5] As the Second Circuit has observed, notification provisions advance several important policies:

`They enable insurers to make a timely investigation of relevant events and exercise early control over a claim. Early controls may lead to a settlement before litigation and enable insurers to take steps to eliminate the risk of similar occurrences in the future. When insurers have timely notice of relevant occurrences, they can establish more accurate renewal premiums and maintain adequate reserves.' ... While this court offered this observation in the context of a dispute over compliance with a notice-of-occurrence provision, the considerations, particularly the concerns over an insurer's capacity to conduct litigation and settlement negotiations, apply equally to notice-of-claim provisions.
Blank, 27 F.3d at 794 (quoting Commercial Union Ins. Co. v. International Flavors and Fragrances, Inc., 822 F.2d 267, 271 (2d Cir.1987)).
[6] In the absence of mitigating factors, courts have found, as a matter of law, even short periods of delay to be unreasonable. See American Home Assurance Co. v. Republic Insurance Co., 984 F.2d 76, 78 (2d Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993) (collecting cases); Blank, 27 F.3d at 796; Olin Corp., 743 F.Supp. at 1053. "[C]ourts have routinely found periods of delay less than ten months to be unreasonable." Blank, 27 F.3d at 796 (collecting cases).
[7] Underwriters do not contest that they were afforded an opportunity to conduct an early investigation of the Robbery by Insureds' notice of the occurrence of the Robbery.
[8] Insureds seemingly argue that, having provided Underwriters with notice of the occurrence of the Robbery, they should no longer have been required to furnish Underwriters notice as soon as practicable after individual claims were made. This would require the Court to alter the express provisions of the agreement freely entered into by the parties and to upset settled New York law.
[9] In other words, the New York Supreme Court merely repeated the allegation made by M & C but did not make an actual finding in reliance on that representation. In fact, the insurance policy was never in dispute in the earlier proceeding and the State Court never made any decision with respect to it.
[10] For example, in the same statements by M & C quoted by insureds, M & C also states that the New York Court should vacate the default because the possibility that the judgment will be rendered uncollectible is unlikely due to: (1) defendants' ten years in business; (2) defendants' large warehousing operation; and (3) the fact that no further claims or actions are anticipated.
[11] The State Court stated:

Two factors need to be considered when moving to open a default. The first factor is whether or not the default is excusable. In the case at bar, defendants have established that any delay herein was unintentional. The second factor is whether or not the moving party has shown any merit to his substantive position. Defendants herein have established substantial meritorious defenses. Therefore, defendants are entitled to have their day in Court and properly defend this matter on its merits.
Notice of Motion for Summary Judgment, dated March 1, 1995, ex. 28 at 4 (copy of decision rendered in the State Court on Insureds' motion to vacate the default judgment).
[12] The Court notes that if Insureds' argument were credited in this case, Underwriters would have been in a better situation had they refused to appoint M & C, with a reservation of rights, to attempt to vacate the default. Underwriters would not then have had to fear the possibility of potential inconsistencies, and Insureds would have been left to suffer the consequences of their own inaction, without even Underwriters temporary intervention. In other words, the Court would be creating an incentive for an insurer first to attempt to decline coverage rather than to endeavor first to extricate its insured from immediate legal difficulties, and only later to undertake to demonstrate that the insured's actions had excused underwriter from its obligations.
[13] This Court, having determined that Insureds failed to establish estoppel, even if M & C represented Underwriters, need not determine whether M & C did, in fact, represent Underwriters and Insureds simultaneously.